ELECTRONICALLY FILED
1/15/2020 10:40 AM
26-CV-2020-900008.00
CIRCUIT COURT OF
DALE COUNTY, ALABAMA
DELORES WOODHAM, CLERK

## IN THE CIRCUIT COURT OF DALE COUNTY, ALABAMA

LAURA THOMS ,                          )
INDIVIDUALLY, AND AS                   )
PERSONAL REPRESENTATIVE                )
OF                                     )
THE ESTATE OF ROBERT                   )
THOMS,                                 )     CASE NO.: _____
                                       )
      Plaintiff,                       )
                                       )
vs.                                    )
                                       )
ADVANCED TECHNOLOGY                    )
SYSTEMS COMPANY, INC.; SUN
LIFE ASSURANCE COMPANY OF
CANADA; and Fictitious Party
Defendants, No. 1 through No. 11,
hereinafter described


**Fictitious Defendants:**
**No. 1-4, being the person, or persons, or entity, whether singular or plural,**
**responsible for procuring a life insurance policy for Advanced Technology**
**Systems Company, Inc., and/or Robert Thoms;**

**No. 5-8, being the person, or persons, or entity, whether singular or plural,**
**who, or which issued any policy of insurance which provided coverage for the**
**death of Robert Thoms on the occasion made the basis of this lawsuit, or who**
**issued said insurance policy;**

**No. 9-11, being the person, or persons, or entity, whether singular or plural,**
**whose negligence, wantonness, or other wrongful conduct contributed to cause**
**the occurrence made the basis of this lawsuit;**

**Plaintiff avers that the identities of the Fictitious Party Defendants are**
**otherwise unknown to Plaintiff at this time, or if their names are known to**
**Plaintiff at this time, their identities as proper party defendants are not**
**known to Plaintiff, but their true names will be substituted by amendment**
**when ascertained.**

1

## COMPLAINT

COMES NOW, Plaintiff, LAURA THOMS, individually, and as personal representative of the Estate of Robert Thoms, by and through the undersigned counsel, hereby sues Defendants, ADVANCED TECHNOLOGY SYSTEMS COMPANY, INC. (ATSC), SUN LIFE ASSURANCE COMPANY OF CANADA (SUN LIFE) (collectively referred to as Defendants) and Fictitious Party Defendants No. 1 through No. 11 for breach of contract, bad-faith, fraud, negligent misrepresentation, and suppression of a material fact, and in support thereof, states as follows:

### JURISDICTION AND VENUE

1.      This is an action for damages that exceeds the minimal jurisdictional limits of this Court.

2.      This action concerns contractual agreements discussed, negotiated, agreed to, and executed in Ariton, Dale County, Alabama.

### PARTIES

3.      Robert Thoms was a resident of Ariton, Dale County, Alabama.

4.      Robert Thoms passed away on or about January 1, 2019.

5.      Plaintiff Laura Thoms is a resident of Ariton, Dale County, Alabama.

2

6.     Plaintiff Laura Thoms is Robert Thoms widow, and is the duly appointed personal representative of the Estate of Robert Thoms, and is fully authorized to act on behalf of said estate. See Exhibit A.

7.     Defendant ATSC is a United States government contractor with its principal place of business located in McLean, Virginia, but which maintains offices in Alabama.

8.     Defendant Sun Life is an insurance company with its principal place of business located in Wellesley, Massachusetts.

9.     At all times material herein, Defendants regularly transacted business in the State of Alabama.

10.     Fictitious Parties Nos. 1 through 4, being the person, or persons, or entity, whether singular or plural, responsible for procuring a life insurance policy for Advanced Technology Systems Company, Inc., and/or Robert Thoms.

11.     Fictitious Parties Nos. 5 through 8, being the person, or persons, or entity, whether singular or plural, who, or which issued any policy of insurance which provided coverage for the death of Robert Thoms on the occasion made the basis of this lawsuit, or who issued said insurance policy.

12.     Fictitious Parties Nos. 9 through 11, being the person, or persons, or entity, whether singular or plural, whose negligence, wantonness, or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit.

3

13. The identities of the fictious party defendants named above are unknown, and whose true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

## FACTUAL ALLEGATIONS

14. On or about October 13, 2016, Defendant ATSC extended a written offer of employment to Robert Thoms, detailing the terms of the offer. See Exhibit B, Offer Letter from ATSC.

15. The offer was made to Robert Thoms at his home in Ariton, Alabama.

16. In addition to salary, start date, and first work assignment (Kenya, Africa), Defendant ATSC's offer also included "outstanding . . . life insurance policies" for Robert Thoms.

17. Shortly after receiving ATSC's offer, Robert Thoms accepted, and began working as ATSC's employee.

18. Per the terms of the employment agreement, and in reliance on the promises therein, Robert Thoms began working for ATSC.

19. Per the terms of the employment agreement between Robert Thoms and ATSC, Robert Thoms was entitled to participate in ATSC's benefits package, which included life insurance. See Exhibit B.

4

20. Robert Thoms elected to participate in ATSC's life insurance benefit, and provided all required paperwork to establish life insurance coverage under ATSC's benefits package. See Exhibit C, Sun Life Enrollment Form.

21. Under the terms of the life insurance benefit, Defendant ATSC contracted with Defendant Sun Life to provide a group life and accidental death and dismemberment insurance benefit in the amount of 100% of Robert Thoms gross annual salary, up to $200,00.00. See Exhibit D, Benefit Overview.

22. Laura Thoms completed and returned all Sun Life life insurance paper work, having power of attorney regarding Robert Thoms, on or about December 16, 2016. See Exhibit C.

23. Lara Thoms, per the enrollment form, was the primary beneficiary of Robert Thoms' group life and accidental death, and dismemberment insurance policy (life insurance), and known to both Defendants ATSC, and Sun Life as a third party beneficiary to the life insurance policy. See Exhibit C.

24. Under the terms of the employment agreement between Robert Thoms and Defendant ATSC, ATSC was to, and did, pay the life insurance policy premium. See Exhibit E, Benefits Summary.

25. Robert Thoms was given a temporary first duty assignment in Kenya, Africa, but Robert Thoms maintained his residence in Ariton, Alabama; kept his

5

Alabama driver's license; paid taxes in Alabama; voted as an Alabama resident; visited family in Alabama every year; and received medical treatment in Alabama.

26.    Unfortunately, while in Kenya, Robert Thoms developed septicaemia due to E. Coli, which lead to a subarachnoid hemorrhage, and ultimately resulted in Robert Thoms death on January 1, 2019.

27.    At the time of his death, Robert Thoms' life insurance policy with Defendant Sun Life through his employment with Defendant ATSC was active.

28.    After Robert Thoms died, Plaintiff Lara Thoms filed a claim under the Sun Life policy, but Sun Life denied the claim, asserting that Robert Thoms was not covered under the ATSC's group life policy.

29.    After Sun Life denied the claim, Plaintiff, through undersigned counsel, requested that Sun Life provide a complete copy of the life insurance policy for Robert Thoms, but Sun Life has yet to provide same. See Exhibit G, Letter to Sun Life.

30.    In fact, at no time did either Sun Life, or ATSC ever provide Laura, or Robert Thoms with a copy of the insurance policy after Ms. Thoms returned the enrollment form.

31.    To date, Sun Life has refused to pay the benefits due under the life insurance policy.

6

32.    When providing the life insurance policy, Sun Life represented to ATSC that the policy would cover ATSC's employees, and ATSC in fact understood Sun Life's life insurance policy to cover Robert Thoms. See Exhibit H, Emails between ATSC and Sun Life.

33.    At all times material, Sun Life knew, or should have known which employees ATSC intended for the life insurance policy to cover, including where the employees worked, and the types of jobs they performed.

34.    Nevertheless, Defendant Sun Life still charged Defendant ATSC a premium for Robert Thoms' life insurance policy despite Defendant Sun Life now insisting that no benefits are owed under the life insurance policy because Robert Thoms was not an employee for purposes of the policy.

35.    Plaintiffs have incurred attorney's fees and expenses in bringing this cause of action.

## COUNT I – BREACH OF CONTRACT

### (Against Defendant ATSC, and Fictitious Defendants 1-4, and 9-11)

36.    Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-five (35) above as if fully set forth herein.

37.    Defendant ATSC and Robert Thoms entered into a valid and binding employment agreement in or about October 2016 wherein Defendant ATSC agreed

7

to compensate Robert Thoms and provide certain benefits in exchange for Robert Thoms performing work. See Exhibit B.

38.     Under the employment agreement, Defendant ATSC was obligated to provide life insurance coverage to Robert Thoms.

39.     Defendant ATSC was responsible for procuring the life insurance coverage, and in fact contracted with Defendant Sun Life to provide said coverage.

40.     Under the terms of the life insurance policy procured by Defendant ATSC, and provided by Defendant Sun Life, Robert Thoms was to have life insurance coverage which included a benefit of 100% of Robert Thoms annual salary, up to $200,000.00. See Exhibit D.

41.     Defendant ATSC's obligation to provide life insurance coverage is a material provision of the employment agreement.

42.     Robert Thoms relied on Defendant ATSC's representation that it would provide life insurance coverage when agreeing to work for ATSC.

43.     At all times relevant, Defendant ATSC was aware that Plaintiff was the primary beneficiary of the life insurance policy.

44.     At all times relevant, Robert Thoms performed his obligations under the agreement.

8

45.    However, because Defendant Sun Life refuses to pay the insurance benefit, Defendant ATSC has failed to provide life insurance coverage to Robert Thoms.

46.    Thus, Defendant ATSC has materially breached its agreement with Robert Thoms.

47.    As a result, Plaintiff Lara Thoms, an express, and intended beneficiary under the agreement, has suffered damages in the form of unpaid life insurance benefits because of Defendant ATSC's material breach.

48.    Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT II- BREACH OF CONTRACT

### (Against Defendant Sun Life and Fictitious Defendants 5-11)

49.    Plaintiff re-alleges and incorporates paragraphs one (1) through forty-eight (48) above as if fully set forth herein.

50.    Defendant Sun Life and Robert Thoms, and Laura Thoms entered into a valid and binding agreement on or about December 8, 2016, wherein Defendant Sun Life offered to provide life insurance coverage for Robert Thoms, and Robert Thoms and Laura Thoms accepted. See Exhibit C.

51.    Under the terms of the life insurance policy to be provided by Defendant Sun Life, Robert Thoms was to have life insurance coverage which

9

included a benefit of 100% of Robert Thoms annual salary, up to $200,000.00. <u>See</u> Exhibit D.

52. Robert Thoms' employer, Defendant ATSC, paid the premiums for said insurance policy.

53. At all times relevant, Robert Thoms performed his obligations under the agreement, and all conditions precedent have occurred, or been met.

54. However, though it has been notified of Robert Thoms' benefit qualifying death, Defendant Sun Life refuses to pay the insurance benefit.

55. Payout of the insurance benefit is a material provision of the agreement.

56. Accordingly, Defendant Sun Life is in material breach of the contract.

57. As a result, Plaintiff Lara Thoms, an express, and intended beneficiary under the agreement, has suffered damages in the form of unpaid life insurance benefits because of Defendant Sun Life's material breach.

58. Plaintiff has incurred attorney's fees and costs in bringing this action.

## COUNT III- BREACH OF CONTRACT

### (Against Defendant Sun Life as Third-Party Beneficiaries and Fictitious Defendants 1-11)

59. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-eight (58) above as if fully set forth herein.

10

60.    Defendant Sun Life and ATSC entered into a valid, and binding agreement wherein Sun Life agreed to provide life insurance coverage for ATSC's employees in exchange for payment of a policy premium from ATSC.

61.    At all times relevant, Defendant Sun Life and ATSC expressly intended, and understood that Robert Thoms, and Plaintiff were third party beneficiaries under their agreement.

62.    ATSC performed its obligations under the agreement with Defendant Sun Life, i.e., it paid the required premiums.

63.    However, Defendant Sun Life materially breached its agreement with ATSC by failing to provide life insurance coverage for Robert Thoms, ATSC's employee.

64.    As a result, Plaintiff Lara Thoms, an express, and intended beneficiary under the agreement, has suffered damages in the form of unpaid life insurance benefits because of Defendant Sun Life's material breach.

65.    Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT IV- BAD FAITH

### (Against Defendant Sun Life and Fictitious Defendants 5-11)

66.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-five (65) above as if fully set forth herein.

11

67.   Defendant Sun Life entered a valid, and binding agreement to provide life insurance coverage for ATSC's employees, including Robert Thoms.

68.   At the time Defendant Sun Life entered into the agreement with ATSC, Defendant Sun Life knew ATSC's business, including the employees ATSC wanted to purchase life insurance coverage for.

69.   Specifically, Defendant Sun Life knew where ATSC's employees worked, and the types of jobs ATSC's employees performed, and ATSC understood that the insurance policy offered by Sun Life would cover their employees, including Robert Thoms. See Exhibit H.

70.   Moreover, Defendant ATSC paid all required premiums to Defendant Sun Life.

71.   Nevertheless, Defendant Sun Life has intentionally denied Plaintiff's insurance claim made upon the passing of Robert Thoms.

72.   Defendant Sun Life has no reasonably legitimate purpose for denying the claim.

73.   Defendant Sun Life knew of the absence of a reasonably legitimate purpose for denying the claim.

74.   Alternatively, Defendant Sun Life intentionally failed to determine whether a reasonably legitimate purpose for denying the claim existed.

12

75.   At all times relevant, Defendant Sun Life and ATSC expressly intended, and understood Robert Thoms, and Laura Thoms to be third party beneficiaries of their agreement.

76.   As a result of Defendant Sun Life's bad faith failure to pay on the insurance policy, Plaintiff has suffered damages in the form of unpaid insurance benefits.

77.   Defendant Sun Life's conduct was intentional, willful, and wanton.

78.   Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT V- NEGLIGENT PROCUREMENT

**(Against Defendant ATSC and Fictitious Defendants 1-4 and 9-11)**

79.   Plaintiff re-alleges and incorporates paragraphs one (1) through seventy-eight (78) above as if fully set forth herein.

80.   Through its employment agreement with Robert Thoms, Defendant ATSC promised to provide life insurance coverage for Robert Thoms.

81.   Because Defendant ATSC promised to provide life insurance coverage for Robert Thoms, Defendant ATSC had a legal duty to provide said life insurance coverage.

82.   However, because Defendant Sun Life has denied, and continues to deny Plaintiff Laura Thoms' claim resulting from Robert Thoms death, asserting that

the policy did not cover Robert Thoms, Defendant ATSC has failed to procure life insurance coverage for Robert Thoms.

83.     Thus, Defendant ATSC breached its duty to Plaintiff by negligently failing to procure life insurance coverage for Robert Thoms.

84.     As a result of Defendant ATSC's breach of duty, Plaintiff has suffered damages in the form of unpaid insurance benefits.

85.     Plaintiff has incurred attorney's fees and costs in bringing this cause of action.

## COUNT V- FRAUD

### (Against Defendant ATSC and Fictious Defendants 1-4 and 9-11)

86.     Plaintiff re-alleges and incorporates paragraphs one (1) through eight-five (85) above as if fully set forth herein.

87.     Defendant ATSC falsely represented to Robert Thoms that it would provide life insurance coverage as part of the terms of employment.

88.     Defendant ATSC's obligation to provide life insurance coverage was a material provision of the agreement.

89.     At the time that Defendant ATSC made the false representation described above, Defendant ATSC knew said representation was false.

14

90.    At the time that Defendant ATSC made the false representation described above, Defendant ATSC intended said false representation to induce Robert Thoms into agreeing to the terms of the employment agreement.

91.    Defendant ATSC's false representation did induce Robert Thoms into agreeing to the employment agreement.

92.    Contrary to its representation in the employment agreement, Defendant ATSC did not provide life insurance coverage for Robert Thoms.

93.    As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

94.    Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

### COUNT VI- NEGLIGENT MISREPRESENTATION

### (Against Defendant ATSC Fictious Defendants 1-4 and 9-11)

95.    Plaintiff re-alleges and incorporates paragraphs one (1) through ninety-four (94) above as if fully set forth herein.

96.    Defendant ATSC falsely represented that it would provide life insurance coverage to Robert Thoms.

97.    Defendant ATSC either knew, was without knowledge as to the truth or falsity, or should have known that its representation was false.

15

98.   Defendant ATSC intended that its representation induce Robert Thoms into agreeing to the employment agreement.

99.   Robert   Thoms   justifiably   relied   on   Defendant   ATSC's misrepresentation.

100.   Contrary to its representation in the employment agreement, because Sun Life has denied Plaintiff's claim for benefits under the life insurance policy, Defendant ATSC did not in fact provide life insurance coverage for Robert Thoms.

101.   As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

102.   Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT VII- SUPPRESSION OF A MATERIAL FACT

### (Against Defendant ATSC Fictious Defendants 1-4 and 9-11 )

103.   Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred two (102) above as if fully set forth herein.

104.   Defendant ATSC was under a duty to disclose to Robert Thoms that the Sun Life life insurance policy did not cover him.

105.   Instead, Defendant ATSC concealed, or failed to disclose that Robert Thoms was not covered under the policy.

106.   Whether Robert Thoms was covered under the policy is a material fact.

16

107. Defendant ATSC's concealment, or failure to disclose the material fact induced Robert Thoms into agreeing to the employment agreement.

108. Unbeknownst to Robert Thoms, the Sun Life policy did not cover him.

109. As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

110. Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT VIII- FRAUD

### (Against Defendant Sun Life and against Fictitious Defendants 5-11)

111. Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred ten (110) above as if fully set forth herein.

112. Defendant Sun Life falsely represented to ATSC, and Robert Thoms that ATSC's employees, including Robert Thoms, were covered under the group life insurance policy.

113. Defendant Sun Life's obligation to provide life insurance coverage to ATSC's employees, including Robert Thoms, was a materially provision of the agreement.

114. Defendant Sun Life knew that its representation was false, and that its insurance policy would not cover ATSC's employees, including Robert Thoms.

17

115.   At the time Defendant Sun Life made the false representation, it intended the representation to induce ATSC, and Robert Thoms into the agreement.

116.   As a result of Defendant Sun Life's misrepresentation, ATSC, and Robert Thoms were induced into the agreement.

117.   As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

118.   Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT IX- NEGLIGENT MISREPRESENTATION

### (Against Defendant Sun Life and against Fictitious Defendants 5-11)

119.   Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred eighteen (118) above as if fully set forth herein.

120.   Defendant Sun Life falsely represented that it would provide life insurance coverage to ATSC's employees, including Robert Thoms.

121.   Defendant Sun Life either knew, was without knowledge as to the truth or falsity, or should have known that its representation was false.

122.   Defendant Sun Life intended that its representation induce ATSC and Robert Thoms into the agreement

123.   ATSC and Robert Thoms justifiably relied on Defendant Sun Life's misrepresentation.

124.   Contrary to its representation in the agreement, Defendant Sun Life did not provide life insurance coverage for ATSC's employees, including Robert Thoms.

125.   As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

126.   Plaintiff has incurred attorney's fees and expenses in bringing this cause of action.

## COUNT X- SUPPRESSION OF A MATERIAL FACT

### (Against Defendant Sun Life and against Fictitious Defendants 5-11)

127.   Plaintiff re-alleges and incorporates paragraphs one (1) through one hundred twenty-six (126) above as if fully set forth herein.

128.   Defendant Sun Life was under a duty to disclose to ATSC and Robert Thoms that the life insurance policy did not cover Robert Thoms.

129.   Instead, Defendant Sun Life concealed, or failed to disclose that Robert Thoms was not covered under the policy.

130.   Whether Robert Thoms was covered under the policy is a material fact.

131.   Defendant Sun Life's concealment, or failure to disclose the material fact induced ATSC and Robert Thoms into the agreement.

132.   Unbeknownst to ATSC and Robert Thoms, the Sun Life policy did not cover Robert Thoms.

133.   As a result, Plaintiff has suffered damages in the form of unpaid insurance benefits.

134.   Plaintiffs has incurred attorney's fees and expenses in bringing this cause of action.

**WHEREFORE**, the Plaintiff, Laura Thoms, in her individual capacity, and as the personal representative of the Estate of Robert Thoms, demands judgment against the Defendants, both named and fictious party, jointly and severally, in an amount to be determined by jury along with interests and costs.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: January 15, 2020

*/s/Jeremiah J. Talbott*
_____

Jeremiah J. Talbott, Esquire
Alabama Bar No. ASB-1579-L64J
Law Office of Jeremiah J. Talbott, P.A.
900 E. Moreno Street
Pensacola, FL  32503
Phone: (850) 437-9600
Fax: (850) 437-0906
jjtalbott@talbottlawfirm.com
civilfilings@talbottlawfirm.com
*Attorney for Plaintiff*

# EXHIBIT A

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF | ) | IN THE PROBATE COURT OF |
| | ) | |
| ROBERT JOSEPH THOMS, JR., | ) | DALE COUNTY, ALABAMA |
| | ) | |
| DECEASED. | ) | CASE NO. __18-026__ |

## LETTERS TESTAMENTARY

The will of **Robert Joseph Thoms, Jr.**, deceased, having been duly admitted to record in said County, Letters Testamentary are hereby granted to **Laura Lynn Thoms**, Executrix named in said will, who has complied with the requisitions of the law, and is authorized to take upon herself the execution of said will.

WITNESS my hand this, the _5th_ day of _February_, 2019.

_Sharon A. Michalic_
**Sharon A. Michalic**
Judge of Probate

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF DALE | ) |

I, Sharon A. Michalic, Judge of Probate in and for said County and State, hereby certify that the within and foregoing is a true, correct, and complete copy of the Letters Testamentary issued to **Laura Lynn Thoms** as Executrix of the will of **Robert Joseph Thoms, Jr.**, deceased, as the same appears of record in my office, and are still in full force and effect.

Given under my hand and seal of office this, the _5th_ day of _February_, 2019.

_Sharon A. Michalic_
**Sharon A. Michalic**
Judge of Probate

# EXHIBIT B



# Advanced Technology Systems Company

**2010 Corporate Ridge Drive
Suite 910
McLean, Virginia 22102**

*tel:* 703-525-7258          www.atscva.com          *fax:* 703-525-7286

October 13, 2016

Robert Thoms Jr.
1184 County Road 221
Ariton, AL 36311

Dear Robert,

I am pleased to extend this offer to join Advanced Technology Systems Company (ATSC), as a Field Service Representative.

As part of your employment, you will:

- Have a annual total compensation package of one hundred six thousand eight hundred dollars ($106,800)
- Report to Chuck Litz, Director-Programs, who is located at our headquarters in Mclean, VA. Your first assignment will be on the Kenya Contract in Laikipia Air Base and various other locations in Kenya.
- Have an anticipated start date of October 16, 2016
- Enjoy outstanding health and dental coverage, as well as other benefits 401K, group disability and life insurance policies.
- Accumulate 10 days of personal time off, 3 days of sick time and all official holidays per contract terms
- Be compensated for professional services on a bi-monthly basis
- Be classified as an exempt employee; exempt from overtime as defined in the Fair Labor Standards Act

While we all hope and expect to find our professional relationship mutually beneficial, you will be employed at-will and you therefore will be free to terminate your employment at any time and for whatever reason you believe is appropriate. ATSC retains the same rights as to termination. No term of condition of employment with ATSC alters the employment at-will relationship.

Your duties will be those that ATSC may assign to you from time to time. As an ATSC employee, you will be expected to comply with ATSC policies and procedures. Please note that all employee terms and conditions may be changed, from time to time, at ATSC's discretion.

As a condition of employment, we will complete a background check encompassing three areas (criminal, education, and employment). With the exception of employees placed in positions of financial responsibility, a financial credit check will not be conducted. Employment is contingent upon completion of a satisfactory background check and conditioned upon your signing the



attached Agreement on Ideas, Inventions and Confidential Information, as well as Employment Agreement.

We believe our company objectives of providing superior services and products to our clients and maintaining a stimulating and flexible work environment for our employees are compatible with your goals. Choosing to join ATSC and assisting us in our mission to build a reputable, growing business around talent and technical superiority is an exciting concept that rewards both your interests and the interests of our team.

Please sign the offer letter, Employment Agreement and the Agreement on Inventions, and return a signed hard copy of each to Courtney Togni and retain a copy for your records. If you have any questions regarding this offer, please contact Courtney Togni at 703-556-0557.

Sincerely,

Habib Debs
Chairman & CEO

_____

I accept the above conditions of employment with ATSC.

Robert Thoms Jr.

12/14/2017
Date Signed

_____
Anticipated Start Date

**Employment Agreement**

This is to confirm the agreement (hereinafter "Agreement") made, under which Advanced Technology Systems Company (hereinafter "ATSC") has retained Robert J. Thoms, Jr., (hereinafter "Employee") as an at-will employee

1. <u>Full Time Employment</u>
   Employee will be employed as a Field Service Representative assigned on the Kenya contract in Laikipia Air Base and various other locations in Kenya as assigned.  Employee will devote substantially all of his business time, attention, and energies to the business of ATSC.

   This agreement will begin on December 1, 2017 for a period of Six (6) months, with a possible extension of an additional Twelve (12) months.

   Employee understands that any outside employment, whether or not related to the business of ATSC, must be approved in writing by ATSC Executive Management, in advance.

2. <u>Compensation</u>
   Employee will be compensated for professional services payable on or by the 5th working day after the 15th and the 5th working day after the last day of each month.

3. <u>Expenses</u>
   Business expenses require written pre-approval by management.  ATSC shall promptly reimburse Employee for business expenses that Employee reasonably incurs, provided Employee submits such records and documentation of expenses as ATSC may reasonably require.  Reimbursement is subject to ATSC's existing policy on employee business expenses which may be changed from time to time by ATSC at its sole discretion.

4. <u>Benefits</u>
   Employee shall be eligible to participate in the standard fringe benefit package and bonus plans for employees maintained by ATSC.

5. <u>Professional Standards</u>
   Employee's services hereunder shall be consistent with recognized professional practices and procedures and shall conform to the highest standards of care, skill, and diligence appropriate to the nature of the services rendered.

   Employee will not engage in any activity in connection with any assignment undertaken pursuant to this Agreement which is unlawful or illegal under the laws of such place where the activity occurs, or might be likely to have a material adverse effect in any other jurisdiction where such activity is unlawful or illegal.

   Employee will not engage in any activity in connection with any assignment undertaken pursuant to this Agreement which might injure the business reputation of ATSC without prior, specific authorization.

6. Confidential Information
   Employee will not without authorization, disclose, publish, or use, or permit anyone else to disclose, publish, or use any proprietary or confidential information or trade secrets of ATSC, its clients, or any other third party including previous employers at any time during or after the term of this Agreement. This obligation shall continue so long as such information remains legally protectable as to persons receiving it in a confidential relationship. Employee hereby agrees to return to ATSC any proprietary information or material in Employee's possession upon request or at the termination of this Agreement.

   Employee will not retain without authorization any proprietary or confidential information of any third party including previous employers. If the employee is in possession of such information prior to the term of this agreement, the employee will dispose of (return, destroy, etc.) such information prior to employment with ATSC.

7. Post-Employment Appearances
   Employee agrees that in the event ATSC requires the services of Employee for purposes of preparation for or attendance at proceedings before an official tribunal after the termination of this Agreement, Employee will use his or her best efforts to be available at such times and at such locations as requested by ATSC. In any such instance, ATSC will compensate Employee for all time spent at a rate equivalent to the greater of one half the rate ATSC is able to invoice a third party for such time or Employee's salary at the time of the termination of Employee's employment with ATSC. In addition, ATSC will reimburse Employee for all reasonable expenses incurred in connection with such request.

8. Post Employment Restrictions
   For a period of two years following the termination of this Agreement, Employee shall not directly or indirectly sell or market to existing ATSC customers or ATSC projects (including pending projects), or be employed on such projects. In addition, Employee agrees that, for a one year period after the termination of this Agreement, Employee shall not employ, solicit the employment of, or aid any third party to solicit the employment of any employee of ATSC in any capacity.

9. Entire Agreement
   This Agreement, and the Agreement on Ideas, Inventions and Confidential Information sets forth the entire understanding between Employee and ATSC and supersedes all prior agreements and understandings, written or oral, relating to the terms of such services and may not be changed or modified except in a writing signed by both parties hereto or their authorized representative or attorney.

## AGREEMENT ON IDEAS, INVENTIONS
## AND CONFIDENTIAL INFORMATION

THIS AGREEMENT is entered into between Advanced Technology Systems Company ("Company") and myself, the undersigned employee of Company.  Company now has and expects to develop confidential and proprietary materials and highly sensitive information of immeasurable value which I recognize must be carefully protected for Company to be successful.  To induce Company to employ me, and in consideration of my employment by Company and such other consideration that may be provided by the Company to me, the receipt and sufficiency of which I hereby expressly acknowledge, Company and I hereby agree, intending to be legally bound, as follows:

1.     **Company Confidential Materials and Information**

The following materials and information, whether having existed, now existing, or to be developed or created during the term of my employment by Company (herein referred to collectively as the "Company Confidential Information") are covered by this Agreement:

1.1.     Software.  All information relating to existing software products, whether owned or licensed by Company, and software in various stages of research and development which are not generally known to the public or within the computer industry or trade in which Company competes (such as know-how, design specifications, algorithms, technical formulas, engineering data, benchmark test results, methodologies, procedures, techniques, and information processing processes) and the physical embodiments of such information (such as drawings, specification sheets, design notes, source code, object code, load modules, schematics, flow charts, logic diagrams, procedural diagrams, coding sheets, work sheets, documentation, annotations, printouts, studies, manuals, proposals and any other written or machine-readable manuals, proposals and any other written or machine readable expressions of such information as are fixed in any tangible media, whether written or machine-readable, including magnetic or electronic memory).

1.2.     Other Products and Services.  All information relating to consulting, training and other proprietary products or services, whether existing or in various stages of research and development, which are not generally known to the public or within the computer industry or trade in which Company competes (such as know-how, specifications, technical data, engineering data, processes, techniques, methodologies, and strategies) and the physical embodiments of such information (such as drawings, schematics, specification sheets, instructor manuals, course materials, training aids, video cassettes, transparencies, slides, taped recordings of presentations, proposals, printouts, studies, contracts, maintenance manuals, documentation, and any other written or machine-readable expressions of such information as are fixed in any tangible media).

1.3.     Business Procedures.  All information concerning or relating to the way Company conducts its business which is not generally known to the public (such as internal business procedures, controls, plans, licensing techniques and practices, supplier, subcontractor and prime contractor names and contracts and other vendor information, computer system passwords and other computer security controls, financial information, distributor information, information supplied by clients and customers of Company and employee data) and the physical embodiments of such information (such as check lists, samples, services and operational manuals, contracts, proposals, print-outs, correspondence, forms, listings, ledgers, financial statements, financial reports, financial and operational analyses, financial and operational studies, management reports of every kind,



**ATSC Offer Letter & Employment Agreement**                              **Page 3 of 8**

10. <u>Governing Law</u>

This Agreement shall be governed by and construed in accordance with the substantive laws of the Commonwealth of Virginia, without giving effect to the doctrine of conflict of laws. This Agreement is not assignable.

**Employee**                                **Advanced Technology Systems Company**

Robert J. Thoms, Jr.                        Paul Debs
                                            President
12/14/2017                                  12/18/2017
Date                                        Date

databases, employment records pertaining to employees other than myself, and any other written or machine-readable expressions of such information as are fixed in any tangible media).

1.4.     Marketing Plans and Customer Lists. All information pertaining to Company's marketing plans and strategies; forecasts and projections; marketing practices, procedures and policies; financial data; discounts; margins; costs; credit terms; pricing practices, procedures and policies; goals and objectives; quoting practices, procedures and policies; and customer data including customer lists, contracts, representatives, requirements and needs, specifications, data provided by or about prospective existing or past customers and contract terms applicable to such customers, and the physical embodiments of such information (such as license agreements, customer lists, print-outs, databases, marketing plans, marketing reports, strategic business plans, marketing analyses and management reports, seminar and class attendee rosters, trade show or exhibit attendee listings, listings of potential customers and leads, and any other written or machine-readable expressions of such information as are fixed in any tangible media).

1.5.     Not Generally Known. Any information in addition to the foregoing which is not generally known to the public or within the industry or trade in which Company competes which gives Company any advantage over its competitors, and the physical embodiments of such information in any tangible form, whether written or machine-readable in nature.

2.     **General Knowledge**

The general skills, knowledge and experience gained during my employment with Company, and information publicly available or generally known within the industry or trade in which Company competes, is not considered Company Confidential Information. Also, upon termination of my employment with Company, I shall not be restricted from working with a person or entity which has independently developed information or materials similar to Company Confidential Information as long as I comply with my continuing obligations under this Agreement.

3.     **Employee Obligations**

During my employment with Company, I acknowledge and agree that I will have access to Company Confidential Information and materials and will occupy a position of trust and confidence with respect to Company's affairs and business. I agree to take the following steps to preserve the confidential and proprietary nature of Company Confidential Information and materials.

3.1.     Non-Disclosure. During and after my employment with Company, I will not use, disclose or transfer any of the Company Confidential Information or materials other than as authorized by Company within the scope of my duties with Company, and will not use in any way other than in Company's business any Company Confidential Information, including information or material received by Company from others and intended by Company to be kept in confidence by its recipients. I understand that I am not allowed to sell, license or otherwise exploit any products (including software in any form) which embody or otherwise exploit in whole or in part any Company Confidential Information or materials. Notwithstanding anything herein to the contrary, I may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of my employment by the Company and all materials of any kind (including opinions and other tax analyses) that are provided to me relating to such tax treatment and tax structure.

3.2.     Disclosure Prevention. I will take all reasonable precautions to prevent the inadvertent or accidental exposure of Company Confidential Information.

3.3.    <u>Removal of Material</u>. I will not remove any Company Confidential Information from Company's premises or make copies of such materials except for use in Company's business. Notwithstanding the foregoing, I understand that I may at times work from home or from a non-Company owned or operated work site, and I agree that working from any such remote location in no way affects the designation or protected status of the Company Confidential Information or my obligations not to use or disclose such information other than in the ordinary conduct of Company's business.

3.4.    <u>Return All Materials</u>. I will return to Company all Company Confidential Information, materials and copies of the foregoing at any time upon the request of Company, in any event and without such request, prior to the termination of my employment by Company. I agree not to retain any copies of any Company Confidential Information materials after my termination of employment for any reason.

3.5.    <u>No "Moonlighting"</u>. During my employment with Company, I agree not to accept or continue in any job, consulting work, directorship, or employment other than with Company, without the written approval of senior management of Company.

3.6.    <u>No Solicitation of Employees</u>. Both during my employment and for twelve (12) months after my employment with Company is terminated, I agree not to solicit, directly or indirectly, any of Company's key employees for employment with a person or entity involved in marketing or developing products or services competitive with Company's products or services. Key employees include supervisory personnel, executives, personnel in charge of any department, section or subdivision within Company and project, contract managers (or directors) and senior personnel on any individual project or projects.

3.7.    <u>Computer Security</u>. During my employment with Company, I agree only to use computer resources (both on and off Company's premises) for which I have been granted access and then only to the extent authorized. I agree to comply with Company's policies and procedures concerning computer security.

3.8.    <u>E-Mail</u>. I understand that Company maintains an electronic mail system and related facilities for the purpose of business communications. I acknowledge that Company retains the right to review any and all electronic mail communications, with or without notice, at any time.

**4.    Proprietary Information of Third Persons**

I agree not to disclose to Company or use in Company's business any information or material relating to the business of any third person if such disclosure would cause me to breach any duty or obligation I owe or have to that third person or if such disclosure would be unlawful.

**5.    Ideas and Inventions**

Company shall have the unlimited and exclusive rights in any drawings, designs, specifications, notes, improvements, discoveries or other work developed by me in the performance of my work for Company, whether now existing or later developed for Company.

I hereby assign to Company all my right, title and interest in any inventions and ideas, patentable or not, that I make or conceive, alone or with others, during the period of time in which I am employed by Company, and that relate in any way to the actual or prospective business of Company. I agree to disclose routinely to Company all inventions and ideas covered by this Agreement, and I will,

**10.    Enforcement**

I acknowledge that in the event of the unauthorized use or disclosure of any of Company Confidential Information or materials by me, Company's business interests will be irreparably injured, the full extent of Company's damages will be impossible to ascertain, monetary damages will not be an adequate remedy for Company, and Company will be entitled to enforce this Agreement by an injunction or other equitable relief, without the necessity of posting bond or security, which I expressly waive. I understand that Company may waive some of the requirements expressed in this Agreement, but that such a waiver to be effective must be made in writing by Company senior management and should not in any way be deemed a waiver of Company's right to enforce any other requirements or provisions of this Agreement. I agree that each of my obligations specified in this Agreement is a separate and independent covenant that shall survive any termination of this Agreement and that the unenforceability of any of them shall not preclude the enforcement of any other covenants in this Agreement.

**11.    General Terms**

This is my entire agreement with Company with respect to its subject matter and its date, superseding any prior oral or written, express or implied negotiations and agreements, and its terms will be governed by the laws of the Commonwealth of Virginia without regard to conflict of laws provisions. This Agreement may not be changed in any respect except by a written agreement signed by both myself and an officer of Company. If any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

By my signature below, I acknowledge that I have reviewed this Agreement carefully and understand that the covenants and obligations it contains are binding on me.

Signature:        _____

Print Name:       ROBERT J THOMS JR

Date Signed:      12/14/2017

Address:          1184 COUNTY ROAD 221

                  ARITON, AL. 36311

Accepted and agreed to on

behalf of Company:

By:               _____

                  Paul Debs
                  President

upon request, execute specific assignments and take any action necessary to enable Company to secure patents, copyrights or otherwise secure its proprietary rights in such inventions or ideas.

### 6.    Written Materials

**6.1**    Ownership. I acknowledge and agree that all writings, including without limitation, software program code, logic diagrams, flow charts, decision charts, drawings, procedural diagrams, coding sheets, documentation manuals of any kind produced by me in the course of my work for Company are works produced for hire and the property of Company (unless such works are in the public domain under the Federal Procurement Regulations), including without limitation any copyrights on those writings; but to the extent any such writing may not, by operation of law or otherwise, be a work made of hire, I hereby assign to Company the ownership of copyright in such works, whether published or unpublished. I further agree upon request to execute such specific assignments or instruments and take any action necessary to enable Company to secure its copyright rights in such works.

**6.2**    Moral Rights. I understand that the term "moral rights" means any rights of paternity or integrity, including any right to claim authorship of a copyrightable work, to object to a modification of such copyrightable work, and any similar right existing under the judicial or statutory law of any country in the world or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." I forever hereby waive and agree never to assert any moral rights I may have in any copyrightable work that is assigned to Company as a result of Section 6.1 hereof, even after any termination of my employment with Company.

### 7.    Publications

I agree not to submit any writing for publication or deliver any speech that contains any Company Confidential Information unless I receive advance written clearance from an authorized representative of Company.

### 8.    Conflicting Obligations and Rights

I agree to inform Company promptly of any apparent conflicts between my work for Company and (a) any obligations I may have to preserve the confidentiality of another's proprietary information or materials or (b) any rights I claim to any inventions or ideas before using the same on Company's behalf. Otherwise, Company may conclude that no such conflict exists and I agree thereafter to make no such claim against Company. Company shall receive such disclosures in confidence and consistent with the objectives of avoiding any conflict of obligations and rights or the appearance of any conflict of interest.

### 9.    Nature of Relationship

Nothing herein shall be construed as constituting an agreement, understanding or commitment of any kind that Company shall continue to employ me, nor shall this Agreement limit in any way Company's right to terminate my employment at any time for any reason whatsoever. I hereby acknowledge and agree that my employment with Company is and shall be "employment at will." Without limiting the generality of the foregoing, I acknowledge that I will be subject to immediate dismissal for any breach of this Agreement.

# EXHIBIT C

# Sun Life Assurance Company of Canada



## Group Enrollment form

Complete all sections of the Group Enrollment Form. Make sure you complete and sign the form during the enrollment period or within 31 days of your eligibility date. Benefits completely paid by your employer (also called non-contributory benefits) cannot be refused.

## General information

| Employer name | | Account/policy number | Location | Date effective |
|---|---|---|---|---|
| Advanced Techology Systems Company, Inc. | | 234640 | VA | |

| Street address | City | State | Zip code |
|---|---|---|---|
| 2010 Corporate Ridge Drive Suite 910 | McLean | VA | 22102 |

| Type of activity: ☒ New Enrollment ☐ Change | Occupation |
|---|---|
| Reason: | Field Service Representative |

Date employed: ☒ Full-Time  Date: _____  ☐ Part-Time  Date: _____    ☐ Rehire☐ Return from layoff  Date: _____

## Employee information

| Employee's Full Legal Name (First, MI, Last) | ☒ Male ☐ Female | Date of birth | Marital status | Social Security No. |
|---|---|---|---|---|
| Robert J. Thoms, Jr. | | REDACTED | MARRIED | REDACTED |

| Street address | City | State | Zip code |
|---|---|---|---|
| 1184 County Road 221 | Ariton | AL | 36311 |

| Current active employment type | Employee status:☐ Management ☒ Salary | Salary |
|---|---|---|
| 40 # of hours   ☒ Full-Time ☐ Part-Time | ☐ Hourly ☐ Union ☐ Non-Union ☐ Retired | |

You must elect or refuse insurance coverage below within 31 days of your date of eligibility by placing a check mark in the appropriate box(es). Not all of the benefit options listed below may be available to you. Your employer will tell you which benefits are available and what your Maximum Guarantee Issue amount is. See "Evidence of Insurability" section for details.

### Life and Disability coverage:

Employee Basic Life and AD&D .............. ☒ Elect ☐ Refuse        Employee Long Term Disability ...... ☒ Elect ☐ Refuse
Dependent Basic Life and Dep AD&D...... ☒ Elect ☐ Refuse        Employee Short Term Disability...... ☒ Elect ☐ Refuse

### Dental coverage:

**If you refuse Dental benefits for yourself, you automatically refuse these benefits for any dependents. If you refuse any benefit now, and later request to add that benefit, your coverage may be limited as outlined in the plan certificate of coverage.  For more information, please contact your employer.**

Dental ...................................☒ Elect ☐ Refuse        Plan Option:     ☒ Basic
    ☐ Employee                                                                        ☐ Enhanced
    ☒ Employee + Spouse
    ☐ Employee + Child(ren)
    ☐ Family

## Dependent information

Please complete this entire section if you are selecting dependent coverage. No employee can be insured as a dependent when he/she is also insured as an employee for any benefit under the same policy.

**If more space is needed, please add additional pages.**

| Relationship | Full legal name (First, MI, Last) | Gender | Social Security No. | Date of birth | Check if elected | |
|---|---|---|---|---|---|---|
| | | | | | Dep Life | Dep Dental |
| Spouse / Partner | Laura L. Thoms | FEMALE | XXX-XX REDACTED | REDACTED | ☐ | ☒ |
| Children | | | XXX-XX- | | ☐ | ☐ |
| | | | XXX-XX- | | ☐ | ☐ |
| | | | XXX-XX- | | ☐ | ☐ |

### Primary Beneficiary Designation

**Basic Life and AD&D Insurance** – On the lines below, list the individual(s) who should receive proceeds in the event of your death. You may specify as many individuals as you like, but the total proceeds must equal 100%. This is your primary beneficiary. Attach additional pages if necessary. If you do not name a beneficiary or if no beneficiary is alive at the time of your death, proceeds will be payable in accordance with your Group insurance policy.

| Name of Primary Beneficiary(ies) (First, M.I., Last) | Relationship to employee | Address | Social Security Number | Percent share of proceeds* | |
|---|---|---|---|---|---|
| 1  Laura L. Thoms | SPOUSE | 1184 County Road 221 | XXX-XX REDACTED | 100 | % |
| 2 | | | XXX-XX- | | % |

### Secondary Beneficiary Designation

**Basic Life and AD&D Insurance**– On the lines below, list the individual(s) who should receive the proceeds ONLY IF ALL of the individuals listed above are not living at the time of your death. This is your secondary (or contingent) beneficiary. The Secondary beneficiary is not paid if your primary beneficiary is alive at the time of your death. Attach additional pages if necessary.

| Name of Secondary Beneficiary(ies) (First, M.I., Last) | Relationship to employee | Address | Social Security Number | Percent share of proceeds* | |
|---|---|---|---|---|---|
| 1  Barbra J. Massey | Step-Daughter | 1184 County Road 221 Ariton, Alabama 36311 | XXX-XX REDACTED | 50 | % |
| 2  Robert J. Thoms, III | Son | 205 Brenda Lane, Enterprise, Alabama 36330 | XXX-XX REDACTED | 50 | % |

**Evidence of insurability**

A medical Evidence of Insurability ("EOI") application will be required for any employee who applies for coverage more than 31 days past his/her eligibility date. An EOI application is also needed if you:

- apply for a higher coverage than the Maximum Guaranteed Issue amount
- want to increase your existing coverage now or at a later date, whether your existing coverage is with Sun Life Assurance Company of Canada or a prior insurance carrier
- decline coverage and then want it at a later date

Coverage subject to evidence of insurability will not go into effect until Sun Life Assurance Company of Canada approves it.

I understand that:

- I am requesting coverage under a Group Insurance policy offered by my employer. This coverage will end when my employment terminates.
- My employer will deduct all or part of the premium for contributory coverage from my pay.
- If I decline coverage for myself or, if applicable, for my family now and want it at a later date, I/we will have to submit an Evidence of Insurability application which is acceptable to Sun Life Assurance Company of Canada. I have read the Evidence of Insurability notice.
- I have read the Fraud Warning below.
- If I am not actively at work due to injury, illness, layoff or leave of absence on the date that any initial or increased coverage is scheduled to start under the plan, such coverage will not start until the date I return to work.
- When required by the coverage, if my spouse or any of my dependent children are confined due to an injury or illness, as required by the coverage, on the date that any initial or increased coverage is scheduled to start under the plan, such coverage will not start until the date they are no longer confined and are able to perform their normal activities.

By signing below, I am verifying that the information I have provided is true and correct to the best of my knowledge and belief.

X _Laura L. Thoms POA Robert J. Thoms, Jr._          08-Dec-2016

Employee Signature                                    Today's Date

**To the Employee**: Make a copy of this form for your records before submitting it to your employer.

**To the Employer:** This original enrollment form should remain at the employer's site. Family status, coverage, or beneficiary changes should be recorded on another copy of the Enrollment form.

**For employer use only**
Provide the employee's earnings amount below. Most employers should use the "All coverages" box only. However, if your group policy requires that you calculate separate earnings amounts by coverage, please enter those amounts in the second set of boxes.

Indicate whether earnings amount is annual pay, or some other pay frequency. If hourly, please indicate the number of hours worked per week. Although most plans define earnings as **salary-only** (not including bonuses, commissions, etc.), you should check your group policy for the proper earnings definition to use.

| All coverage earnings $ | ☐ Annual ☐ Monthly | ☐ Semi-monthly ☐ Weekly ☐ Bi-weekly | ☐ Hourly Number of hours worked per week: _____ |
|---|---|---|---|

| Life earnings $ | ☐ Annual ☐ Monthly | ☐ Semi-monthly ☐ Weekly ☐ Bi-weekly | ☐ Hourly Number of hours worked per week: _____ |
|---|---|---|---|
| STD earnings $ | ☐ Annual ☐ Monthly | ☐ Semi-monthly ☐ Weekly ☐ Bi-weekly | ☐ Hourly Number of hours worked per week: _____ |
| LTD earnings $ | ☐ Annual ☐ Monthly | ☐ Semi-monthly ☐ Weekly ☐ Bi-weekly | ☐ Hourly Number of hours worked per week: _____ |

## Fraud warnings

Please read the fraud warning below before signing the enrollment form. State law requires that we notify you of the following:

**General fraud warning:** Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects that person to criminal and civil penalties.

**Colorado fraud warning:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**District of Columbia and Rhode Island fraud warning:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Florida fraud warning:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**Kansas fraud warning:** Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud as determined by a court of law.

**Kentucky fraud warning:** Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects that person to criminal and civil penalties.

**Maryland fraud warning:** Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**New Jersey fraud warning:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Oregon fraud warning:** Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may commit a fraudulent insurance act, which may subject that person to criminal and civil penalties.

**Tennessee, Virginia and Washington fraud warning:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Vermont fraud warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

Sun Life Assurance Company of Canada is a member of the Sun Life Financial group of companies.
© 2011 Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481. All rights reserved.
Sun Life Financial and the globe symbol are registered trademarks of Sun Life Assurance Company of Canada.

# EXHIBIT D

# ADVANCED TECHNOLOGY SYSTEMS COMPANY, INC.

## SunLife Benefits Overview



# Dental

The ATSC Dental plan is insured by SunLife.  You may seek treatment from any dentist you wish, but you will receive enhanced benefits when you seek treatment from United Concordia Dental PPO network providers.

| Services | In-Network | Out-of-Network* |
|---|---|---|
| **Preventive Services**<br>Routine exams (2x per 12-month period)<br>Cleanings (2x per 12-month period)<br>Bitewing and full mouth x-rays<br>Fluoride (2x per year, children thru age 18)<br>Sealants (children thru age 15) | SunLife pays 100%<br>You pay 0% | SunLife pays 100%<br>You pay 0% |
| **Calendar Year Deductible**<br>Individual<br>Family Maximum | $25<br>$75<br>Applies to Basic and Major Services Only | |
| **Basic Services**<br>Fillings<br>Periodontal Maintenance (2x per 12-mo period)<br>Periodontal Surgery<br>Endodontics (root canals)<br>Oral Surgery | SunLife pays 90%<br>You pay 10% | SunLife pays 80%<br>You pay 20% |
| **Major Services**<br>Crowns / Inlays / Onlays<br>Implants<br>Dentures | SunLife pays 60%<br>You pay 40% | SunLife pays 50%<br>You pay 50% |
| **Annual Maximum** | $2,000 per covered family member<br>(Preventive services **DO NOT** count against this maximum) | |

* Charges for out-of-network covered services are covered up to the 90th percentile of UCR (the usual, customary, and reasonable charge for that service based on the geographic location of the provider). Charges in excess of the UCR are not covered under the plan, and are the member's responsibility

# Disability Income Benefits

ATSC provides full-time employees with Short-Term and Long-Term Disability income benefits, and pays the full cost of this coverage. In the event you become disabled from a non work-related injury or sickness, disability income benefits are provided as a source of income. You are not eligible to receive short-term disability benefits if you are receiving workers' compensation benefits.

| | Short-Term Disability | Long-Term Disability |
|---|---|---|
| **Benefits Begin** | After 7 calendar days of disability | After 90 calendar days of disability |
| **Maximum Benefit Period** | Up to 12 Weeks | Up to your Social Security Normal Retirement Age |
| **Maximum Percentage of Income Replaced** | 60% | 60% |
| **Maximum Benefit** | $2,500 per week | $10,000 per month |

Please refer to the STD Tax Choice slides for information on your annual "Tax Choice" option as it relates to the Short-Term Disability plan.

# Basic Life / AD&D Insurance

ATSC provides full-time employees with group life and accidental death and dismemberment (AD&D) insurance, and pays the full cost of this benefit. Your benefit amount is equal to 100% of your gross annual salary, up to a maximum of $200,000.

To update your beneficiary, obtain a beneficiary designation form from Courtney Togni. Return your completed form to her, keep a copy of the form for your records, and provide copies to your designated beneficiaries.

*The information in this Enrollment Guide is presented for illustrative purposes only. The text contained in this Guide was taken from various summary plan descriptions and benefit information. While every effort was taken to accurately report your benefits, discrepancies or errors are always possible. In case of discrepancy between the Guide and the actual plan documents the actual plan documents will prevail. All information is confidential, pursuant to the Health Insurance Portability and Accountability Act of 1996. If you have any questions about your Guide, contact Human Resources.*