IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA THOMS, *individually and as personal representative of the estate of Robert Thoms*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-00235-RAH-JTA (WO) |
| ADVANCED TECHNOLOGY SYSTEMS COMPANY, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motions to Dismiss and to Strike, (Docs. 21, 23), filed by Defendants Sun Life Assurance Company of Canada ("Sun") and Advanced Technology Systems Company, Inc. ("ATSC"). The Plaintiff, Laura Thoms, individually and as personal representative of the Estate of Robert Thoms, has filed a response, (Doc. 31), and the Defendants have filed replies, (Docs. 34, 35).

Upon consideration, the Court concludes that the motions are due to be granted in part and denied in part.

**I. APPLICABLE LEGAL STANDARDS**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th

Cir. 2013) (citing *Bickley v. Caremark RX, Inc*., 461 F.3d 1325, 1328 (11th Cir. 2006)).

"[G]enerally, the existence of an affirmative defense will not support a Rule 12(b)(6)

motion to dismiss for failure to state a claim. A district court, however, may dismiss a

complaint on a Rule 12(b)(6) motion when its own allegations indicate the existence of an

affirmative defense, so long as the defense clearly appears on the face of the complaint."

*Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted). *Accord*

*Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1305 (11th Cir. 2015) ("A

district court may dismiss a complaint for failure to state a claim if an affirmative defense

appears on the face of the complaint.").

## II. BACKGROUND

Laura Thoms ("Laura" or "Plaintiff") commenced this case in the Circuit Court of

Dale County, Alabama on January 15, 2020. (*See* Doc. 2-1.) After the Defendants removed

the case to this Court on May 7, 2020, Laura filed an amended complaint, the operative

pleading in this case, adding an additional claim under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Doc. 17.)  Laura's causes of

action arise from Sun's denial of life insurance benefits under a group life insurance policy

provided to Laura's now-deceased husband, Robert, as part of his employment package

with his new employer, ATSC. Counts I through X of the Amended Complaint allege state

law claims for breach of contract, bad faith, negligent procurement, fraud, negligent

misrepresentation, suppression, and fraud. Count XI requests relief under ERISA against

Sun only.

According to the Amended Complaint, in late 2016, Robert accepted an offer of

employment with ATSC that included a group life insurance policy, the premiums of which were to be paid by ATSC.  (Doc. 17, pp. 4-6.)  Robert and Laura completed and returned all of the pertinent paperwork for coverage.  (Doc. 17, p. 5.)  ATSC procured the life insurance coverage from Sun.  (Doc. 17, p. 5.)  As alleged by Laura, ATSC "was to, and did, pay the policy premium." (Doc. 17, p. 6.)

On January 1, 2019, Robert died from septicaemia while on assignment in Kenya for ATSC.  (Doc. 17, p. 6.)  Shortly thereafter, Laura filed a claim for life insurance benefits with Sun.  (Doc. 17, p. 6.)

On May 9, 2019, Sun provided Laura with notice that it was denying the claim because, according to Sun, Robert did not meet the policy definition of an "employee" since Robert "was not working on a temporary assignment outside of the United States at the time of his death."  (Doc. 17-6.)  According to Sun, under the policy, an eligible "employee" means a person who was employed by ATSC "within the United States" and also a person who was "working on a temporary assignment outside of the United States for a period of twelve (12) months or less." (Doc. 17-6.)  The letter, citing the policy, also provided that "[i]f the Employee is working outside of the United States for more than 12 months or other than on a temporary assignment, the Employee will not be considered an Employee under this Policy unless Sun Life approves the Employee in writing." (*Id*.)

In addition to this language explaining the basis for its denial, Sun's letter also stated the following in pertinent part:

> If you disagree with our decision, you ***may request*** in writing a review of the denial within 180 days after receiving this notice of denial.

You *may submit* written comments, documents, records or other information relating to your claim and *may request*, free of charge, copies of all documents, records and other information relevant to your claim.

We will review your claim on receipt of the written request for review, and will notify you of our decision within a reasonable period of time but not later than 45 days after the request has been received. If an extension of time is required to process the claim, we will notify you in writing of the special circumstances requiring the extension and the date by which we expect to make a determination on review. The extension cannot exceed a period of 45 days from the end of the initial review period. If a period of time is extended because the claimant failed to provide necessary information, the period for making the benefit determination is tolled from the date we send notice of the extension to the claimant until the date on which the claimant responds to the request for additional information. The claimant will have 45 days to provide the specified information.

**If your claim is governed by ERISA, you have the right to bring a civil action under the Employee Retirement income Security Act of 1974 (ER1SA), §502(a), following an adverse determination upon review.**

(*Id*. (emphasis added).)

Laura retained legal counsel and requested from Sun a complete copy of the group policy, but Sun "failed or refused to provide the policy." (Doc. 17, p. 7.) A copy of the policy was not provided to Laura until approximately one year later, and only after Laura filed this lawsuit against Sun and ATSC. (Doc. 17, p. 7.) Until that time, Laura only had a copy of the Benefit Overview and Benefit Summary, neither of which identified the plan administrator or claims procedures. (Doc. 17, p. 8.)

Up to today, Sun has "charged and collected from Defendant ATSC a premium for Robert Thoms' life insurance policy despite Defendant Sun Life now insisting that no benefits are owed under the life insurance policy because Robert Thoms was not an employee for purposes of the policy." (Doc. 17, p. 8.)

## III. ANALYSIS

### A. ERISA Preemption

Sun and ATSC argue that Laura's state law claims in Counts I through X of her operative complaint are due to be dismissed because they are preempted by ERISA. The Court agrees.

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.' 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). As the Eleventh Circuit has explained:

> ERISA is one of only a few federal statutes under which two types of preemption may arise: conflict preemption and complete preemption.
>
> Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims. This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan. 29 U.S.C. § 1144(a) ...
>
> Complete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule. It differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense. Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Consequently, any cause of action within the scope of the civil enforcement provisions of § 502(a) is removable to federal court.

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1344 (11th Cir. 2009) (quotations and some citations omitted). "Although related, complete and

defensive preemption are not coextensive: Complete preemption is narrower than defensive ERISA preemption, which broadly supersedes any and all State laws insofar as they ... relate to an ERISA plan. ERISA § 514(a), 29 U.S.C. § 1144(a). Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under § 502(a)." *Connecticut State Dental Ass'n*, 591 F.3d at 1344 (citing *Cotton v. Mass. Mut. Life Ins. Co*., 402 F.3d 1267, 1281 (11th Cir. 2005)).

"The [defensive] preemption provision of ERISA provides that it 'shall supersede any and all state laws insofar as they may now or hereafter relate to any employment plan' covered by ERISA." *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc*., 57 F.3d 1040, 1042 (11th Cir. 1995) (quoting 29 U.S.C. § 1144(a)). "A state law 'relates to' a covered employee benefit plan 'if it has a connection with or reference to such a plan.'" *Id.* (quoting *District of Columbia v. Greater Wash. Bd. Of Trade*, 506 U.S. 125, 129 (1992)). Defensive preemption requires dismissal of state-law claims. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). As defensive preemption is an affirmative defense, it is Sun and ATSC's burden to demonstrate its applicability. *See id.* ("Defensive preemption provides only an affirmative defense to certain state-law claims."). Moreover, to dismiss a claim under Rule 12(b)(6), the "affirmative defense" of defensive preemption must "clearly appear[] on the face of the complaint." *Fortner*, 983 F.2d at 1028.

Here, Laura does not dispute that the subject life insurance policy was issued as part of an ERISA-covered group plan.  In fact, she specifically pleads a cause of action under ERISA.  Furthermore, this Court's review of the complaint allegations confirms that this

6

policy was issued as part of an ERISA plan because the plan was established by Robert's employer, ATSC, to provide beneficiaries, such as Laura, with death benefits through an employer-provided and paid-for insurance policy. *See Butero*, 174 F.3d at 1214. Accordingly, the Court finds that the subject insurance policy is governed by ERISA.

While Laura makes no real contest that her claims for breach of contract, bad faith, and fraud are preempted, the Court concludes these claims undoubtedly relate to an insurance policy issued under an ERISA plan and therefore are due to be dismissed as preempted by ERISA. *See Butero,* 174 F.3d at 1215 (state law bad faith, breach of contract, and fraud claims are all preempted under § 1144(a) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987)); *Williams v. Wright*, 927 F.2d 1540, 1549-50 (11th Cir. 1991); *Variety Children's Hosp*., 57 F.3d at 1042 ("[W]here state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system.")).

Laura instead argues that certain of her state law claims are not preempted by ERISA because they "do not arise from an ERISA plan." (Doc. 31, p. 8.) In particular, Laura argues that her claims "for negligent procurement, negligent misrepresentation, and suppression of material fact are based on alleged shortcomings in communications between Plaintiff and Defendants for which ERISA provides no remedy for, and the claims are not brought as a beneficiary of the plan, thus, under *Davila*, these claims are not preempted." (Doc. 31, p. 10, citing *Davila*, 542 U.S. at 210.)

In support of her argument against preemption of these procurement-related (i.e., point of hiring) claims, Laura relies upon the Seventh Circuit's decision in *Franciscan*

*Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 598 (7th Cir. 2008).  There, the Seventh Circuit concluded that a third-party healthcare provider's claims for negligent misrepresentation and estoppel against an employee benefit plan were not preempted under the *Davila* analysis because those claims arose from duties separate and  apart from ERISA and the plan terms.  Those claims were independent from ERISA because the third-party provider was not suing as a beneficiary or in the shoes of a beneficiary under the plan nor was it suing for benefits under the plan.  Instead, the provider was suing the plan for misrepresentations made by the plan to the provider in response to a specific inquiry made by the provider (again, not a beneficiary).

Laura's reliance on *Franciscan Skemp* is misplaced. (*See* Doc. 31, pp. 9-12, discussing *Franciscan Skemp*). In *Fransiscan Skemp*, the plaintiff was a third-party healthcare provider, not a plan beneficiary as is Laura in this case.  Furthermore, the plaintiff in *Franciscan Skemp* was not seeking benefits from an ERISA plan, nor challenging a benefit claim denial, as is Laura in this case.  Indeed, in *Fransiscan Skemp*, the plaintiff's claims had little to do with the plan itself or a claim decision. That is not the set of facts presented here.

The Eleventh Circuit has similarly concluded that ERISA does not preempt claims against third-party healthcare providers such as the one found in *Fransiscan Skemp*.  *E.g.*, *Connecticut State Dental Ass'n*, 591 F.3d at 1346 ("healthcare provider claims are usually not subject to complete preemption because '[h]ealthcare providers ... generally are not considered 'beneficiaries' or 'participants' under ERISA.'") (quoting *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001)). Therefore, *Franciscan Skemp*

8

does not aid Laura here.

This Court is also unpersuaded by Laura's other arguments, especially given the "expansive" interpretation applicable to the "related to" inquiry under ERISA. *Franklin v. QHG of Gadsden, Inc*., 127 F.3d 1024, 1028 (11th Cir. 1997). All of Laura's claims, including the claims for negligent procurement, negligent misrepresentation, and suppression, relate to an ERISA plan, an ERISA entity, the language of a group life insurance policy subject to ERISA, and a benefit denial under the ERISA-governed policy.

Indeed, it cannot be disputed that the conduct at issue (even the "shortcomings in communications" as described by Laura, (Doc. 31, p. 10)), is "intertwined" with the refusal by an ERISA entity to pay benefits to a plan beneficiary (here, Laura).  *Franklin*, 127 F.3d at 1028.  Laura cannot avoid the preemption doctrine by characterizing her complaint as one arising under state law or that certain claims relate to misrepresentations during independent communications.   Simply put, Laura's state law claims have a direct connection to the administration of benefits under an ERISA plan and therefore they are completely preempted and due to be dismissed.

## B. <u>Failure to Exhaust</u>

Sun also asserts that the ERISA claim (Count XI) is due to be dismissed for failure to exhaust administrative remedies because Laura failed to request administrative review of the May 9, 2019, claim denial within 180 days of receiving it.  (Doc. 22, pp. 7-10.)

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  *Counts v. Am. Gen. Life & Acc. Ins. Co*., 111 F.3d 105, 108 (11th Cir. 1997). The Eleventh Circuit "appl[ies] the

exhaustion requirement strictly and recognize[s] narrow exceptions only based on exceptional circumstances." *Perrino v. S. Bell Tel. & Tel Co*., 209 F.3d 1309, 1318 (11th Cir. 2000). "[A] district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place...." *Id*. at 1315 (citation and quotations omitted). Additionally, a court may excuse this requirement when "the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." *Watts v. BellSouth Telecommunications, Inc*., 316 F.3d 1203, 1207 (11th Cir. 2003).

Laura contests Sun's exhaustion argument, stating among others that she was under no obligation to submit an appeal prior to filing suit under ERISA but even if she was, then her legal counsel's letter of June 5, 2019, (Doc. 2-2, p. 52), and the April 2019 email communications, (Doc. 2-2, pp. 54-61), between Laura, ATSC and Sun concerning Robert's status as an employee of ATSC, should be construed as an appeal, (Doc. 31, pp. 15-16).

Here, the failure to exhaust argument is presented at the motion to dismiss stage and therefore the allegations in the Amended Complaint must be taken at true. As such, the Court must assume as true that Sun "refused or failed to provide Plaintiff with a copy of the policy upon request," (Doc. 17, p. 30); that in failing to provide Laura with the policy, Sun prevented Laura "from knowing her obligations under the policy, ERISA and prevented her from exhausting her administrative remedies," (*id*., p. 30); that Sun's acts

"denied Plaintiff a meaningful access to the review process," (*id.*, p. 31); and alternatively, that Sun "should have taken Plaintiff's request for a copy of the policy as an appeal of Sun Life's May 9, 2019 denial," (Doc. 17, p. 30).

The first task for the Court is to interpret the May 9, 2019, claim denial letter, which is the only document given to Laura that references the claims review process.  From this Court's review, the claim denial letter does not clearly state that Laura *must* file a review or claim appeal before she can file a lawsuit under ERISA.  Instead, the letter couches the review with permissive language (such as "may") and not mandatory language (such as "must").  *See MSPA Claims 1, LLC v. Kingsway Amigo Insurance Company*, 950 F.3d 764, 773-74 (11th Cir. 2020) (discussing the distinction between permissive words such as "may" with mandatory words such as "must").

In *Watts*, *supra*, the Eleventh Circuit was faced with similarly vague language about the necessity of filing a claim appeal or review before filing suit under ERISA.  There, after reviewing the documentation given to the plaintiff (the summary plan description), the Eleventh Circuit concluded that its vague language could reasonably be interpreted as permitting a lawsuit without exhausting her administrative remedies:

> It seems plainer and more straightforward to simply say, as we do, that our doctrine of exhaustion of administrative remedies in ERISA cases includes this rule: If a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court.

*Watts*, 316 F.3d at 1209-1210.

Here, given the early stage of the litigation, the favorable light that must be given to

Laura's complaint allegations, the permissive language in the claim denial letter, and the Eleventh Circuit's opinion in *Watts* concerning permissive rather than mandatory language, the Court concludes that Sun's motion to dismiss the ERISA claim for failure to exhaust administrative remedies is due to be DENIED. The Court chooses to pretermit discussion of the other stated grounds raised by Laura.

### C. **Jury Demand**

Laura's Amended Complaint requests a trial by jury for Counts I through X. (Doc. 17.) Sun and ATSC request that this jury demand be stricken. This request is due to be denied as moot since those claims are due to be dismissed as preempted.

As for the ERISA claim in Count XI, "[i]t is well-settled that plaintiffs bringing ERISA claims are not entitled to jury trials under ERISA because such claims are equitable in nature." *Rolland v. Textron, Inc*., 300 F. App'x 635, 636 (11th Cir. 2008) (per curiam) (unpublished) (citing cases). Accordingly, Laura's jury demand is due to be stricken to the extent the Amended Complaint requests a jury trial on any issue related to Count XI.

### IV. Conclusion

In accordance with the foregoing analysis, it is

ORDERED as follows:

(1) To the extent the Defendants move to dismiss Counts I through X of the Amended Complaint, the Motions to Dismiss, (Doc. 21; Doc. 23), are GRANTED and these claims are DISMISSED with prejudice as preempted under ERISA;

(2) To the extent the Defendants move to strike the jury demands as to Counts I

through X of the Amended Complaint, the Motion to Strike, (Doc. 21), is DENIED as moot since these claims are dismissed;

(3) ATSC is DISMISSED as a defendant since the Plaintiff only asserted state law claims against ATSC, all of which are preempted;

(4) To the extent Sun moves to dismiss Count XI (ERISA) of the Amended Complaint, the Motion to Dismiss is DENIED, (Doc. 21), and therefore this claim shall remain; and,

(5) To the extent the defendants move to strike the jury demand as to Count XI of the Amended Complaint, the Motion to Strike, (Doc. 21), is GRANTED and therefore the jury demand if any is hereby stricken to the extent such is made in the Amended Complaint.

**DONE** and **ORDERED** this 16th day of July 2020.

_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE