IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAURA THOMS, Individually, and as Personal Representative of the Estate of Robert Thoms | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-cv-235-ECM |
| | ) | [WO] |
| | ) | |
| ADVANCED TECHNOLOGY SYSTEMS COMPANY, INC., *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This matter comes before the Court on Defendant Advanced Technology Systems Company, Inc.'s ("ATSC") Renewed Motion to Dismiss (doc. 63) and Defendant Olson Benefits Group, LLC's ("Olson") Motion for Judgment on the Pleadings (doc. 71). Plaintiff Laura Thoms ("Thoms" or "Laura"), individually and as the personal representative of the estate of her husband, Robert Thoms, asserts various state law contract and tort claims against both Defendants.[1]   Because this Court finds that Thoms' state law claims against ATSC and Olson are preempted by ERISA, and that ATSC is not a proper

---

[1]   A third Defendant, Sun Life Assurance Company of Canada ("Sun Life"), is not the subject of this order.

defendant of an ERISA claim, the motions are due to be GRANTED, and Defendants ATSC and Olson are due to be DISMISSED from the case.

## II.    BACKGROUND

Plaintiff Thoms commenced this case in the Circuit Court of Dale County, Alabama on January 15, 2020. (*See* Doc. 2-1).  After removal to this Court on May 7, 2020, Thoms filed an amended complaint, the majority of which was dismissed with prejudice on July 16, 2020. (*See* Doc. 36).  The Court found that the state law tort and contract claims Thoms asserted against Defendants ATSC and Sun Life were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (*Id.* at 5–9).  With no claims remaining against ATSC, the Court dismissed it as a defendant. (*Id.* at 13).

After the Court denied a motion to reconsider, (doc. 45; doc. 53), Thoms filed the operative second amended complaint on April 8, 2021, (doc. 54).  Therein, Thoms reasserts her claims against ATSC, adds Olson as a defendant, and brings twelve total claims:  claims for breach of contract against ATSC and Olson (Counts I, II);  for breach of contract with respect to third party beneficiaries against Olson (Count III);  for negligent procurement against ATSC and Olson (Count IV, V);  for fraud against ATSC and Olson (Count VI, VII);  for negligent misrepresentation against ATSC and Olson (Count VIII, IX);  for suppression of a material fact against ATSC and Olson (Count X, XI);  and for benefits under 29 U.S.C. § 1132(a)(1)(B) against Sun Life and ATSC (Count XII).

Most of these claims are identical to those asserted in Thoms' earlier complaints. She argues, however, that though they were dismissed before, they should survive

dismissal now considering new evidence explained in her complaint. (Doc. 67 at 5–9). Thoms asserts that new evidence uncovered in discovery indicates that "ATSC and Olson failed to procure life insurance coverage for Mr. Thoms in the first place, meaning there was no ERISA plan which governed this case." (*Id.* at 8).   The Court turns now to the motions.

### III.   ANALYSIS

"The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same:  whether the count stated a claim for relief." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (quotations omitted).  And to determine whether each count states a claim for relief, the Court reviews the complaint under the familiar standard of Fed. R. Civ. P. 8(a)(2):  the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To review either motion, the Court "accept[s] as true all material facts alleged in the non-moving party's pleading, and [views] those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *see also Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (setting out the same standard for a motion to dismiss).

While, generally, "the existence of an affirmative defense will not support a Rule 12(b)(6) motion to dismiss," the Court may, however, "dismiss a complaint on a Rule 12(b)(6) motion when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted).

a. **Defendant ATSC's Renewed Motion to Dismiss**

The Court turns first to Defendant ATSC's Renewed Motion to Dismiss. (Doc. 63). ATSC argues that the state law claims brought against it (Counts I, IV, VI, VIII and X) are preempted by ERISA.  (*Id.* at 2–3).  ATSC also argues that because it "has no role . . . in deciding whether to pay or in funding and paying the ERISA life insurance benefits," it is not a proper party to the ERISA claim (Count XII). (*Id.* at 3).  Accordingly, ATSC argues that no claims are properly brought against it and that they should all be dismissed. (*Id.*). Thoms argues that her two sets of claims—the state law claims and then, separately, the ERISA claim—are mutually exclusive.  She asserts that her state law claims are valid in the factual world where ATSC and Olson never procured an ERISA policy for Robert Thoms, and so the claims cannot be (and are not in fact) preempted by ERISA. (Doc. 67 at 2).  Alternatively, if ATSC and Olson *did* procure an ERISA policy that covered Robert Thoms, then her ERISA claim would apply. (*Id.*).

As the Court explained before, ERISA preemption is anything but narrow. (*See* Doc. 36).  "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 2008 (2004).  To that effect,

there are two types of ERISA preemption:  defensive preemption and complete preemption. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343–44 (11th Cir. 2009).  Defensive preemption, "a substantive defense to preempted state law claims[,] . . . arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." *Id.* at 1344 (quoting 29 U.S.C. § 1144(a)). "Complete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule." *Id.*  Complete preemption "derives from ERISA's civil enforcement provision, § 502(a), which has such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.*  Though the two are related, "complete and defensive preemption are not coextensive." *Id.*  Defensive preemption is far broader:  it "supersede[s] any and all State laws insofar as they now or hereafter relate to any" ERISA plan. 29 U.S.C. § 1144(a).

A state law is said to "'relate[] to' a covered employee benefit plan 'if it has a connection with or reference to such a plan.'" *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (quoting *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992)).  If a state law claim is defensively preempted by ERISA, dismissal of that claim is required. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999).

Thoms asserts her claims cannot relate to an ERISA plan because "there was no ERISA plan for Mr. Thoms in the first place because of the acts or omissions of Defendants

ATSC and Olson in failing to procure" one. (Doc. 67 at 11).  She asserts that there was no plan "because ATSC and Olson failed to notify Sun Life that Mr. Thoms worked in Kenya and they failed to obtain Sun Life's written approval for Mr. Thoms in light of his work location." (*Id.* at 11–12).  Because, Thoms argues, "[u]nder the terms of the Sun Life policy," the Defendants were obligated to do so but did not, no valid plan was ever established. (*Id.* at 12).  If no plan was established, Thoms asserts she has no standing to sue under ERISA, and thus her claims cannot be preempted by that statute. (*Id.* at 13).

In support, Thoms cites only to *Bertoni v. Stock Building Supply*, a case from Florida's District Court of Appeal for the Fourth District. 989 So. 2d 670 (Fla. Dist. Ct. App. 2008).  In *Bertoni*, a widow brought a negligence claim and an ERISA breach of fiduciary duty claim against "her deceased husband's former employer, asserting that the employer negligently failed to procure supplemental life insurance for her husband." *Id.* at 672.  The appellate court held that because the plaintiff lacked standing to sue under ERISA since she was neither a "participant" nor a "beneficiary" of an ERISA plan, ERISA could not preempt her negligence claim. *Id.* at 678–79.  The parallels to Thoms' theory of the case are obvious. (Doc. 67 at 13).

Of course, *Bertoni* is not binding on this Court.  Instead, this Court is bound by a case the *Bertoni* court explicitly rejects.  In *Butero v. Royal Maccabees Life Insurance Co.*, the Eleventh Circuit held that even if a plaintiff lacked standing to sue under ERISA, his or her claims could still be defensively preempted under ERISA. 174 F.3d at 1215.  One of the *Butero* plaintiffs was the decedent's employer. *Id.* at 1210–11.  Though "Section

1132(a) grants employers no cause of action for damages," and as such, the employer

lacked standing to sue under ERISA, the court nevertheless held that "claims such as [the

employer's] 'relate to' an ERISA plan" and were defensively preempted. *Id.* at 1215 (citing

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)).

This Court, bound by *Butero*, is not concerned with Thoms' standing to bring a

claim under ERISA to determine if her state law claims are defensively preempted.  Nor

does it matter that ERISA may "provide[] an inadequate remedy" and that state law may

"offer[] more protection to an aggrieved party." *First Nat. Life Ins. Co. v. Sunshine-Jr.*

*Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir. 1992) (citation omitted); *see also Phillips*

*v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir. 1986) ("To argue that Congress created

a 'gap' in the law does not undermine the reasoning on which a finding of preemption is

based.").  Instead, the Court must decide only if an ERISA plan existed, and if Thoms'

state law claims "relate to" that plan.

An employee welfare benefit plan under ERISA is "any (1) 'plan, fund, or program,'

(2) established or maintained (3) by an employer, (4) to provide beneficiaries (5) death

benefits through an insurance policy." *Butero*, 174 F.3d at 1214 (quoting 29 U.S.C.

§ 1002(1)).  The Court finds that all five elements are satisfied, and that thus a plan

governed by ERISA existed.

For starters, that the "plan" involved Robert Thoms' *employer* and was to provide

*death benefits* to *beneficiaries* (elements 3, 5, and 4, respectively) seems undisputed.  The

complaint makes clear that this policy was governed by "Robert's employer, ATSC, to

provide beneficiaries, such as Laura, with death benefits through an employer-provided and paid-for insurance policy." (Doc. 36 at 7).

Thoms seems to assert that there was no "plan, fund, or program" here.  Such an assertion is mistaken.  "An ERISA plan exists whenever there are 'intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.'" *Id.* (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982)). These required elements are clear from the complaint:  Laura Thoms, the intended beneficiary, (doc. 54, para. 27), was to receive death benefits upon successful processing of her application (*id.*, paras. 33–34), out of a plan funded from premiums paid by ATSC, (*id.*, paras. 28–29).

It is also clear that the plan was *established* by an employer.  Though Thoms might contend that because Sun Life later denied benefits, the plan was not established, such an assertion is unavailing.  "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Butero*, 174 F.3d at 1214 (citations omitted).  "Acts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision [to establish a plan] has become reality—*e.g.*, financing or arranging to finance or fund the intended benefits, [or] establishing a procedure for disbursing benefits." *Donovan*, 688 F.2d at 1373.

It is the "reality of a *plan* . . . that is determinative," rather than a "decision to extend certain benefits." *Id.* (emphasis added).  As the court in *Butero* made clear, "that an employer represented to employees that life insurance was available, took payroll

8

deductions to pay premiums, in fact paid premiums, and obviously intended for life insurance to take effect can trump" actions taken by the underwriter. 174 F.3d at 1215. Like the employer did in that case, so too did ATSC here indicate to employees that life insurance was available, (doc. 54, para. 17), allow for employees to apply for insurance and name beneficiaries (*id.*, paras. 18, 27), pay insurance premiums (*id.*, paras. 28–29), and obviously intend for life insurance to take effect.  This panoply of steps was sufficient to move ATSC's plan from intent to reality, and sufficient for this Court to find that the plan was "established" under ERISA.

Thus, Thoms' own complaint makes evident that an ERISA plan existed, established by Robert Thoms' employer, ATSC, to provide beneficiaries death benefits through an insurance policy.  What remains is whether Thoms' state law claims (Counts I, IV, VI, VIII, and X) "relate to" that plan.  Considering that "[t]he Supreme Court has given an *expansive* interpretation to the term 'relate to,'" *Franklin v. QHG of Gadsden, Inc.*, 127 F.2d 1024, 1028 (11th Cir. 1997) (emphasis added) (discussing *N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995)), the Court finds that they do.

Thoms' claims are of the type long acknowledged as preempted by ERISA.  Indeed, "[i]t has long been settled that claims" for breach of contract and fraud are preempted under § 1144(a). *Butero*, 174 F.3d at 1215 (citing *Pilot Life Ins. Co.*, 481 U.S. at 47–48).  So too with Thoms' claims of misrepresentation:  if state law claims of "misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus

9

with the ERISA plan and its benefits system." *Variety Children's Hosp., Inc.*, 57 F.3d at

1042 (citation omitted).  Thoms' claims for misrepresentation are based on exactly that:

because of what ATSC's represented, Robert Thoms believed himself to be covered by the

Sun Life policy, only for Laura Thoms to find, post-denial, that he was not.  Only upon a

failure to pay benefits did Thoms have a claim for misrepresentation.  Thoms' claims for

suppression of a material fact and negligent procurement suffer from the same deficiency.

Thoms was able to bring them only after Sun Life denied Thoms the ERISA benefits she

believed she was entitled to.  Had Sun Life approved Thoms' application for benefits, she

would have no basis for bringing her myriad state law claims.  That connection to the

ERISA plan dooms the very claims it engenders.  Because the Court finds that all Thoms'

state law claims brought against ATSC—counts I, IV, VI, VIII and X—are preempted by

ERISA as evident from the face of the complaint, they are due to be dismissed.

That leaves only Count XII—Thoms' claim under 29 U.S.C. § 1132(a)(1)(B) for

benefits under ERISA—which she asserts in the alternative if an ERISA plan does exist.

ATSC argues that because it lacks any discretion to decide whether to pay benefits under

the plan, it is not a proper defendant for such claim of benefits. (Doc. 68 at 4–7).  Thoms

instead asserts ATSC is the plan administrator, and that the Employer Information Form,

found in discovery, "identifies ATSC's CEO as the primary benefits administrator." (Doc.

67 at 14) (citing Doc. 45-1).[2]  As a benefits administrator, she argues, ATSC *does* have

authority to administer the plan, and is thus a proper defendant for an ERISA claim.

Section 1132(a)(1)(B) provides that a civil action may be brought "to recover

benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C. § 1132(a)(1)(B).  "[T]his section confers a right to sue the plan administrator for

recovery of benefits." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001)

(citing *Rosen v. TRW, Inc.*, 979 F.2d 191, 193–94 (11th Cir. 1992)).  Thus, "if the employer

is administering the plan, then it can be held liable for ERISA violations." *Id.*

To bring a proper claim for ERISA benefits against a defendant, that defendant must

be a "party that controls administration of the plan." *Garren v. John Hancock Mut. Life

Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (per curiam) (citing *Daniel v. Eaton Corp.*,

839 F.2d 263, 266 (6th Cir. 1988)).  In *Garren*, the court explained that because the

plaintiff's employer was the "Plan Administrator," who, per the benefits plan had

"exclusive responsibility and complete discretionary authority to control the operation and

administration of [the] Plan," the employer was the proper party defendant. *Id.*  By contrast,

the company servicing the plan "submitted an affidavit averring that it does not exercise

any discretion, responsibility or control over the administration of the Plan." *Id.*  Without

---

[2]  Because neither the plan document nor the Employer Information Form are attached to the second amended complaint, the Court does not consider either in ruling on this motion to dismiss.  Instead, the Court looks only to what is alleged in the complaint.

power over the plan's administration, the plan servicer was not a proper ERISA defendant. *Id.*

As courts have noted, "[w]hile determining who is the true plan administrator can be fact intensive, a complaint must allege facts upon which the Court may infer that the employer is the proper defendant." *Gardi v. United Healthcare Servs., Inc.*, 437 F. Supp. 3d 1188, 1197–98 (S.D. Fla. 2020). Thoms asserts only one such fact: she alleges that "ATSC is the Plan Administrator." (Doc. 54, para. 176).

However, that title is not determinative—Thoms further alleges that under the terms of the policy, "ATSC has delegated *its entire discretionary authority* to make all final determinations regarding claims for benefits under the benefit plan insured by the policy [to Sun Life]." (*Id.*, para. 177 (emphasis added)). It is axiomatic that delegating one's entire authority leaves none remaining—as such, Thoms alleges that ATSC has no authority to make final decisions on claims for benefits under the plan. Unlike in *Garren*, where the plan administrator employer *maintained* "exclusive responsibility and complete discretionary authority to control the operation and administration" of the plan, 114 F.3d at 187, ATSC here has given that authority away.

Thoms also makes clear in her complaint that it was *Sun Life*, not ATSC, who made the decision to deny benefits. "*Sun Life* notified Plaintiff in writing that *it* was denying the claim" after it interpreted the plan policy. (Doc. 54, para. 35 (emphasis added)). Thoms also asserts that "*Sun Life* denied the claim," (*id.*, para. 41 (emphasis added)) and "*Sun Life* has refused to pay the benefits under the Group Policy," (*id.*, para. 48 (emphasis added)).

Furthermore, Thoms alleges that ATSC failed to get "*Sun Life's* prior written approval if [ATSC] intended to insure Mr. Thoms under [the plan]." (*Id.*, para. 51 (emphasis added)). Nothing in the complaint indicates that ATSC retained any authority to administer this plan, its title as "Plan Administrator" notwithstanding.

Considering ATSC's dearth of administrative authority, the Court finds that ATSC is not a proper defendant to a claim of ERISA benefits. To hold otherwise would be to promote formality over substance, which, in the absence of case law compelling that result, the Court declines to do. Count XII, as brought against ATSC, is due to be dismissed. With no remaining counts against ATSC, it is due to be dismissed entirely.

b. **Defendant Olson's Motion for Judgment on the Pleadings**

The Court turns now to Defendant Olson's Motion for Judgment on the Pleadings. (Doc. 71).[3] Olson argues that the Court should grant its motion and dismiss Thoms' claims for two reasons. First, Olson argues that the Court lacks personal jurisdiction over it. (*Id.* at 6). In the alternative, if this Court *does* have personal jurisdiction over it, Olson argues that the claims brought against it (Counts II, III, V, VII, IX, and XI) are due to be dismissed as preempted by ERISA. (*Id.* at 10). Thoms argues that both assertions are incorrect: that without the benefit of discovery, she has pleaded facts sufficient to establish personal jurisdiction over Olson, and that her claims against Olson are not preempted by ERISA.

---

[3] The nature of Olson's motion is a bit nebulous. The motion is styled as a "Motion for Judgment on the Pleadings" (doc. 71 at 1), but also asserts "Facts in Support of Motion to Dismiss" (*id.* at 3) and acknowledges that it could be "one for summary judgment" or "a motion to be heard before trial . . . under Rule 12(b)(i)," (*id.* at 3 n.1). The Court construes it as it is styled: a motion for judgment on the pleadings under Rule 12(c).

(Doc. 75 at 12–21).   Thoms also argues that if the Court finds that her complaint insufficiently demonstrates the Court's personal jurisdiction over Olson, she should be allowed to conduct limited discovery to answer that question, or that the Court should transfer the case to the Eastern District of Virginia. (*Id.* at 15–18).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings.'" *Perez*, 774 F.3d at 1336 (emphasis in original) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)).  If a review of the competing pleadings "reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)).  As another court succinctly put it, "the Rule 12(c) movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings . . . *a different finding* than the mere determination that the plaintiff's complaint is too deficient to proceed." *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018).

Alongside its motion, Olson provided the Court with significant evidentiary material. (*See* Doc. 71-1).  However, if the Court is to go beyond the pleadings and consider evidence, it must treat Olson's Rule 12(c) motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); (*accord* Doc. 71 at 3 n.1).  If it does so, the Court generally must give the parties notice, and provide "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  The decision to go beyond

14

the pleadings and consider outside evidence lies solely within the Court's discretion. *See, e.g.*, *Maldonado v. Mattress Firm, Inc.*, 2013 WL 2407086, at *2 ("It is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).") (quotation and citation omitted).  Since Thoms has not had the opportunity to present the Court with competing evidence on the issue, the Court declines to consider the additional evidence Olson has provided.

Turning to the competing pleadings, genuine disputes of material facts exist as concerns Olson's actions to confer jurisdiction on this Court.  Thoms asserts, *inter alia*, that Olson knew Robert Thoms resided in Alabama (doc. 51, para. 10); that Olson participated in "transferring documents and information necessary to [completing] enrollment between ATSC's employees, *including Robert Thoms*, ATSC and Sun Life," (*id.* (emphasis added)); that Olson knew Thoms was the primary beneficiary of Robert Thoms' insurance policy (*id.*, para. 27); that Olson knew or should have known where ATSC employees worked (*id.*, para. 53); and that Olson "entered into a valid and binding agreement with Robert Thoms, and Laura Thoms" to procure insurance coverage (*id.*, para. 74).  Olson denied these factual allegations. (*See* Doc. 70, paras. 10, 27, 53, 74).  These disputes are sufficient to defeat Olson's motion on any personal jurisdictional grounds.  If, for example, Olson in fact entered a contract with Robert and Laura Thoms to procure life insurance while they resided in Alabama, a breach of that contract (as alleged) could be sufficient to confer personal jurisdiction over Olson upon this Court.  While those factual

disputes remain unresolved, a motion for judgment on the pleadings under that theory is premature.

However, Olson also argues that the Court should find that all of Thoms' claims brought against Olson are preempted by ERISA.  For the same reasons stated above regarding the state law claims brought against ATSC, the Court agrees.  The state law claims Thoms brings against Olson are nearly identical to those brought against ATSC. The only unique claim, that Olson breached its contract with *ATSC*, injuring Thoms as a third-party beneficiary (Count III), is also preempted by ERISA.  Just as Thoms' claims against ATSC cannot be discussed without reference to the ERISA plan, a claim that Olson breached a contract with ATSC to procure insurance for ATSC's employees is only intelligible after Sun Life denied benefits to Thoms.  Had Sun Life instead granted Thoms' application for benefits, she could not assert a breach of contract claim, either on her own contract or on Olson's.  Accordingly, all claims brought against Olson are defensively preempted by ERISA based upon the facts in Thoms' own complaint.

As such, Olson's motion for judgment on the pleadings is due to be granted under the theory that all counts Thoms brings against Olson are preempted under ERISA and due to be dismissed.

## IV.   CONCLUSION

Accordingly, it is ORDERED

(1) Defendant ATSC's motion to dismiss Counts I, IV, VI, VIII, and X of the Second Amended Complaint (doc. 54), and Count XII as brought against it, is GRANTED;

(2) Defendant ATSC is DISMISSED as a defendant since the Plaintiff has no remaining claims asserted against it;

(3) Defendant Olson's motion for judgment on the pleadings as to Counts II, III, V, VII, IX, and XI of the Second Amended Complaint (doc. 54) is GRANTED; and,

(4) Defendant Olson is DISMISSED as a defendant since the Plaintiff has no remaining claims asserted against it.

Done this 22nd day of November, 2021.


                /s/ Emily C. Marks
                EMILY C. MARKS
                CHIEF UNITED STATES DISTRICT JUDGE